ELLA M. KIRK, Appellant, *vs.* MARY E. KIRK *et al.*
Appellees.

*Opinion filed April 20, 1927.*

1. DEEDS—*deed and contemporaneous agreement must be construed together.* A deed and an agreement executed contemporaneously by the grantees as part of the transaction must be construed together as one instrument.

2. TRUSTS—*when agreement by grantees does not constitute a trust.* While a written agreement by a person that property shall be held or dealt with in a particular manner for the benefit of another raises a trust, an agreement by grantees, who take by quitclaim deed all the grantor's interest as co-heir with them in certain property, that they will pay him his share of whatever sum the property, when sold by them, will bring over and above an estimated amount, cannot be regarded as establishing a trust where the grantor was paid for the sale of his interest for its full value as estimated by himself and the grantees, where there was no agreement to apply the income on the amount paid and where the grantees required no security for the return of the money.

3. PARTITION—*failure to allege that ancestor died seized is not fatal in absence of special demurrer.* It is usual and proper to allege in a bill for partition that the ancestor died seized, but where the complainant has shown the acquiring of title by the ancestor, it is not necessary, in the absence of special demurrer, to allege that it had not subsequently been conveyed.

4. SAME—*when bill should not be dismissed on general demurrer.* Although the facts stated in a bill for partition do not, as claimed by the complainant, establish the right to have a certain deed of her ancestor set aside as a cloud upon her title, the bill should not be dismissed on general demurrer as failing to show title in the complainant where a portion of the property of which partition is sought was not included in the ancestor's deed and the bill shows on its face the right to partition said property.

5. SAME—*court may set aside deed as a cloud on complainant's title—pleading.* Under section 39 of the Partition act the court has power to investigate and determine all questions of conflicting or controverted title and may remove any cloud upon the title of the complainant, set aside a deed obtained by fraud and adjudicate all conflicting interests according to the equitable rights of the parties, and the complainant's bill cannot be said to be multifarious because it asks for such relief.

6. SAME—*when bill may ask for specific performance and partition.* While a legal title is necessary to enable a complainant to have partition and an equitable right to a conveyance of an undivided interest is not sufficient, a complainant who has a contract for conveyance of an undivided interest which he has performed on his part may have a decree for specific performance and then have partition of the lands; and it is not essential that he bring two suits, but the bill may ask for specific performance and also for partition in case performance be decreed.

APPEAL from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

A. F. BEAUBIEN, JUSTIN K. ORVIS, and JAY STOUGH, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, (FREDERIC BURNHAM, and PAUL M. GODEHN, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Lake county having sustained a demurrer to a bill of complaint filed by Ella M. Kirk against Mary E. Kirk and others, dismissed the bill for want of equity, and the complainant appealed.

The allegations of the bill show that George Kirk died on November 19, 1898, leaving a widow, Jane Kirk, and his heirs, Samuel Kirk, his son, and Mary E. Kirk, Elizabeth M. Hauser and Allie K. Porter, his daughters. By his will, which was admitted to probate on December 28, 1898, he devised his real estate in equal parts to his widow and heirs, nominating his widow as executrix and giving her power to sell at public or private sale, and convey, any or all of the real estate except certain property on Genesee street, in Waukegan, and directing that upon a sale or sales being made by her the proceeds should be divided in equal parts among her and the children. The estate was settled and the executrix discharged on February 5, 1902. On September 20, 1911, Samuel Kirk having suffered severe business reverses, and having been for a long time and be-

ing then in mental and physical ill-health and unable to fully care for himself and give enough attention to the management and sale of real estate, and reposing confidence and trust in his mother and sisters to provide for his pressing needs, and to obtain $20,000 of his interest in his real estate and to place the title in persons more physically and mentally competent to complete the sale of the real estate and manage it, made an agreement with his mother and sisters by virtue of which they advanced to him $20,000, which was to be deducted from the share of the real estate which had been devised to him by his father. At the same time, together with his wife, Ella M. Kirk, he conveyed the real estate which had not been disposed of, to Jane Kirk, Mary E. Kirk, Elizabeth M. Hauser and Allie K. Porter by quit-claim deed, the fair cash market value of his interest in the property so conveyed being greatly in excess of $20,000. On April 5, 1915, Samuel died, leaving his widow, Ella M., the complainant, surviving him, and his mother, Jane Kirk, and sisters, Mary E. Kirk, Elizabeth M. Hauser and Allie K. Porter, his heirs, and leaving a will, which was admitted to probate, by which he devised to his widow all his property. Elizabeth M. Hauser died on January 28, 1918, leaving a will devising all her property to her sister Mary. On February 20, 1922, Jane Kirk died leaving a will, by which she devised all her interest in the property involved in this suit to her grand-daughter, Marjorie M. Skene, and her grandsons, Kirk H. and Robert M. Porter. The bill further alleges that Jane Kirk, as executrix of the will of George Kirk, from time to time disposed of certain of the real estate devised by his will, and that at the time of the conveyance by Samuel Kirk to his mother and sisters there remained unsold of the real estate certain tracts described in the bill, all situated in Lake county, Illinois, except a quarter section of land in Holt county, Nebraska.

The agreement by virtue of which the complainant avers his mother and sisters advanced to Samuel Kirk $20,000,

which was to be deducted from the share of the real estate which had been devised to him by his father, recited that whereas he desired to draw what money might be coming to him for his interest in the real estate so that he might have the use thereof at that time, and whereas it could not be ascertained exactly what amount of money he was entitled to receive for his share, and whereas the estate had been approximately estimated at $100,000 and he had received from the other parties to the agreement the sum of $20,000, being the amount estimated to be the value of his share in the estate at that date, and whereas it was the desire of his mother and sisters that he should receive from the estate the full value of his share, therefore it was witnessed "that when said real estate, or any part thereof, shall be sold by said first parties, said Samuel Kirk shall receive in addition to said sum of $20,000 a one-fifth part of the excess over and above the price estimated upon such piece or pieces of real estate, as appears by schedule hereto attached, the same and as fully as if he had not conveyed his interest in said estate, it being the intention of all of the parties hereto that each one thereof shall receive an equal share out of said estate." This instrument purported to be an agreement between the four grantees named in the deed of the first part and Samuel Kirk of the second part but was signed only by the parties of the first part.

The bill alleges that after the execution of the agreement and deed certain rents and incomes were received from the property and from the sale of parts of it by the grantees, and partial accountings were made by them with Samuel Kirk in his lifetime and with the complainant as his sole beneficiary after his death, the last being about January 1, 1925; that full accountings were promised from time to time to him while living and to the complainant since his death, the last being in the year 1924, but none of the promises were kept; that the share of Samuel Kirk in such amounts received by the grantees of his deed from

income and sale, after allowing all deductions, charges and expenses, has been more than the money advanced to him, and there remains unsold at the present time a large and substantial part of the property covered by the agreement, and there remain undistributed in the hands of the grantees substantial amounts from such earnings and sales that in equity and good conscience should be accounted for to the complainant. The bill contains a description of the property so conveyed by Samuel Kirk and the part remaining undisposed of, states that all of it is clear and unincumbered, and avers that the complainant has an undivided one-fifth interest, Mary E. Kirk has an undivided two-fifths interest, Allie K. Porter an undivided one-fifth interest, and Marjorie M. Skene, Kirk H. Porter and Robert M. Porter each an undivided one-fifteenth interest, with the exception of certain property conveyed by them to Allie K. Porter, who has an undivided four-fifths therein. The bill alleges that since the death of Jane Kirk, Samuel Kirk and Elizabeth M. Hauser the other two grantees in the deed from Samuel Kirk and the devisees of the deceased grantees have assumed the entire management and control of the remaining unsold property and have ignored the complainant in relation thereto except as has been stated, and have failed and neglected to fully account to Samuel Kirk or to the complainant for their shares of the income from the proceeds of sale. The bill prays as to all property not conveyed or disposed of, Samuel Kirk's deed of September 20, 1911, be set aside, that a division and partition of the premises be made, that the defendants, Mary E. Kirk, Allie K. Porter, Marjorie M. Skene, Kirk H. Porter and Robert M. Porter, account to the complainant for money received by them from the sales of the property, with income and interest derived therefrom, and pay such sum as may be found due from them, and that the court grant such other and further relief as equity may require.

The principal claim for relief argued by counsel for the appellant is, that the agreement of September 20, 1911, constituted the four grantees in Samuel Kirk's quit-claim deed of that date trustees for the management and sale of the property conveyed. The deed and agreement having been executed contemporaneously must be construed together as one instrument. Undoubtedly, the statement quoted by counsel from Perry on Trusts, (vol. 1, sec. 82,) that no formality is necessary to the creation of a trust, and any agreement in writing by a person having the power of disposal of property that such property shall be held or dealt with in a particular manner for the benefit of another raises a trust in favor of such other person against the person making the agreement, announces a correct rule of law. Does it apply to the agreement in question here? The five beneficiaries of the will of George Kirk had equal interests in his estate, consisting of a large number of parcels of real estate in the city of Waukegan, in the counties of Lake and Cook in Illinois and in the county of Holt in Nebraska. The testator had been dead nearly thirteen years and his estate had been settled more than nine years. His son, Samuel, having been unsuccessful in business, being in bad health mentally and physically and unable fully to care for himself and give sufficient attention to the management and sale of the real estate, in order to provide for his pressing needs wanted to get in money the value of his interest in his father's real estate, all of which he and the other co-tenants estimated to be worth approximately $100,000, whereupon by agreement with his mother and sisters he executed a quit-claim deed conveying to them his one-fifth interest in consideration of its full estimated value of $20,000, which they paid to him, they executing at the same time the instrument in which, after reciting all these facts, they agreed that when the real estate, or any part of it, was sold by them, he should receive, in addition to the $20,000, one-fifth of the excess over the price estimated on

each piece, as appearing on a schedule which was attached. There was no agreement to hold the real estate, or any part of it, for any time, to sell it within any time or to sell it at all, or deal with it in any particular manner for the benefit of the grantor in the deed. There was nothing in the deed or the accompanying agreement to indicate that the transaction was other than it appeared on its face,—a quitclaim of all the grantor's interest for its full value,—but with an agreement that when the grantees sold the property, or any part of it, the grantor should receive one-fifth of the excess received for each parcel for which any excess was received above the value fixed in the schedule. The grantor had sold his interest in the land for its full value as estimated by himself and his vendees as in any ordinary case of bargain and sale, and his conveyance reserved no interest or lien of any kind. Of course, there was no agreement to share in or account for the rents and profits, for the grantor had conveyed and been paid for the only thing out of which rents and profits could accrue to him. There was no agreement to apply either income or the proceeds of sales on the $20,000. The grantor had received that sum as the purchase money for which the deed was executed, and no security was required for its return, for there was no promise or expectation of its return.

In *Seymour* v. *Freer*, 8 Wall. 202, on which the appellant relies, Seymour advanced $5000 to Price, whose executor Freer was, to buy land, taking the title in Seymour's name, the land to be sold within five years, Seymour to receive the money advanced, with interest and taxes paid on the land, the proceeds of the sale, after deducting these amounts, to be divided equally between Seymour and Price. This transaction came within Perry's definition of a trust, because the holder of the legal title had agreed to hold and deal with the land in a particular manner for the joint benefit of Price and himself, and accordingly the court held Seymour as a trustee to account for the proceeds of the

sale of the property. In *Freer* v. *Lake*, 115 Ill. 662, the holder of a mortgage on which default had been made, in consideration of the owner of the equity of redemption making an absolute conveyance of the property to him in satisfaction of the mortgage debt, bound himself, if anything could be made out of the property during the next three years above the mortgage debt, interest, insurance and repairs, to give the owner of the equity of redemption the benefit of it. The deed was executed and possession delivered, and one month afterward the grantee sold the property for the amount of the debt, interest and some expenses which he had incurred for repairs. This transaction also came within Perry's definition, because there was an agreement to hold the title for three years for the benefit of the owner of the equity of redemption and give her the benefit of anything which could be made out of the property in that time. These cases differ from the present case in the respect that in the latter there is not an agreement for holding the title or dealing with the property in any way for the benefit of the grantor in the deed.

In *Lorillard* v. *Silver*, 36 N. Y. 578, a sale of land was made for a certain price, and the buyer promised to pay $500 more in case he should realize $3500 for the land, or any other sum between $3000 and $3500 that he might sell the land for, less the interest on the purchase price for six months and to the time he might dispose of the same. The contract did not impose an obligation on the buyer to sell or use diligence to make a sale or exercise his judgment when an offer to sell should be made. An offer of more than $3500 was made to the buyer and refused, and the seller brought suit for the additional amount provided for in the contract. The right to recover was denied, the court holding that a right of action would arise only in case of an actual sale for the amount stated.

The allegations of the bill do not show the existence of a trust. There is no averment that any parcel of real estate

has been sold at a greater price than that fixed in the schedule. There is an averment that the share of Samuel Kirk in the amounts received by the grantees from income and from sales, after allowing all deductions, charges and expenses, has been more than the money advanced to him; but this allegation is of no importance, since he had no interest in the income and it does not appear that the amount received from sales of any property exceeds the value fixed for it in the schedule. The allegation that the fair cash market value of the interest of Samuel Kirk in the property conveyed was at the time greatly in excess of $20,000 is also immaterial, since he agreed at the time in the estimate of the value of all the property and of his interest in it. The allegation as to partial accountings after the conveyance with Samuel Kirk or with the appellant, and the promises of full accounting, do not affect the case, which depends upon the language of the deed and agreement, and that is not ambiguous. Counsel have not argued that the allegations of the bill are sufficient to sustain a decree setting aside the deed on the grounds of fraud, mental incompetency, undue influence or inadequacy of consideration, and clearly they are not.

Among the parcels of real estate owned by George Kirk and devised by his will was one described as lot 17 in block 1, in Kirk & Powell's addition to Waukegan. This remained unsold on September 20, 1911, and was not included in Samuel Kirk's quit-claim deed of that date. The bill prays that partition be made of the undisposed of property, and the appellant contends that there can be no dispute that she is entitled to partition of lot 17, in which Samuel Kirk never conveyed his interest and in which the legal as well as the equitable title is now in the appellant to the extent of an undivided one-fifth, the defendants having the undivided four-fifths. Counsel for the appellees insist that while the bill establishes the ownership of lot 17 in block 1 on September 20, 1911, it is silent as to

the ownership of it when the bill was filed. The appellant having by the allegations of her bill shown title in her husband, it will be presumed, in the absence of allegation or proof to the contrary, that he continued to be the owner, and that upon his death it would pass by descent, if he died intestate, to his heirs, and by his will, if he left one, to his devisee. Having shown title acquired it was unnecessary to allege that it had not subsequently been conveyed. While it is usual and proper to allege in a bill for partition that the ancestor died seized, it is not necessary, in the absence of a special demurrer on that ground, if the allegation is made that he was seized in his lifetime. In *Schneider* v. *Seibert,* 50 Ill. 284, it is said: "The bill alleges that the parties are the owners of the lots, or, which amounts to the same thing, that their ancestor died seized of the premises and that he died intestate, and that the parties are his heirs-at-law. Although not formal or skillfully drawn, we think the allegation of the bill supports the decree." Here the allegation is that by the will of George Kirk Samuel Kirk became vested in fee simple of the undivided one-fifth of the property and died leaving a will devising all his property to the appellant, and further states that all of said lands are clear and unincumbered and the complainant has an undivided one-fifth interest therein. This is a sufficient allegation of the appellant's title, in the absence of a special demurrer for want of form, for lack of a more specific allegation.

It is claimed, however, that the rule that a bill should not be dismissed for want of equity on general demurrer where it shows a good ground of relief has no application to a bill of complaint to which a demurrer has been sustained based upon a valid ground of special demurrer, and that in this case there were grounds of special demurrer which were valid. It is argued that one ground of special demurrer to which the bill was subject was that it showed on its face a lack of title in the complainant. This ground

325—20

of objection, however, does not go to the whole bill but only to that part of the relief based on the quit-claim deed and agreement of September 20, 1911. The demurrer, so far as this ground was concerned, was improperly sustained, because the demurrer as filed was to the whole bill.

Another special ground mentioned in the demurrer is that the bill was multifarious,—in particular, that an attempt is made to set aside the conveyance from Samuel Kirk and have partition in one suit,—and it is contended that the court has no power in the same suit to set aside the deed and grant a decree of partition of the title thus created. Under section 39 of the Partition act a court has power, in all suits for partition, to investigate and determine all questions of conflicting or controverted title and remove clouds upon the titles of any of the premises sought to be partitioned. Under the power conferred by this section a court may remove any cloud upon the title of the complainant, set aside a deed obtained by fraud, determine any question of conflicting or controverted titles, and adjudicate all conflicting interests according to the equitable rights of the parties. A legal title is necessary to enable the complainant to have partition. An equitable right to a conveyance of an undivided interest is not sufficient. A person having a contract for the conveyance of an undivided interest in land which he has completely performed cannot have a partition on that title, but he may have a decree for specific performance and then have partition of the lands. It is not essential, however, that he obtain a specific performance in one suit and then bring another for the partition of the lands. While a decree must be had for a specific performance on a bill for that purpose, such a bill may also contain a prayer for the partition of the lands in case a specific performance should be decreed. (*Williams* v. *Wiggand,* 53 Ill. 233; *Ellis* v. *Hill,* 162 id. 557.) Here the appellant seeks to set aside the deed made by her predecessor in title which constitutes a cloud on her

title. With that deed out of the way her title is perfect, and she may have the cloud removed and partition in the same suit. The bill is not multifarious for that reason and it was not subject to special demurrer on any of the grounds mentioned. The bill on its face shows a right to the partition of lot 17, and for that reason the demurrer should have been overruled.

The decree is reversed and the cause remanded, with instructions to overrule the demurrer and to take such further proceedings as may be consistent with this opinion.

*Reversed and remanded, with directions.*