(No. 35088.—

OLD SALEM CHAUTAUQUA ASSOCIATION, Appellee, *vs.* ILLI-NOIS DISTRICT COUNCIL OF THE ASSEMBLY OF GOD, Appellant.

*Opinion filed March 20, 1959—Rehearing denied May 19, 1959.*

Kenneth A. Green, of Mattoon, for appellant.

Giffin, Winning, Lindner & Newkirk, of Springfield, (Montgomery S. Winning, and James M. Winning, of counsel,) for appellee.

Mr. Justice Davis delivered the opinion of the court:

Defendant, Illinois District Council of the Assembly of God, appealed from a judgment in an ejectment action in the circuit court of Menard County which awarded possession of certain premises to plaintiff, Old Salem Chautauqua Association. The properties involved are parts of the Old Salem Chautauqua Park described in the complaint as the athletic field and auditorium. This litigation has been before us on two prior occasions.

In cause No. 34162, plaintiff appealed and defendant confessed each error specified in the notice of appeal and stipulated that the cause be remanded to the circuit court for further proceedings. On November 13, 1956, we entered an order allowing the confession of error and reversed and remanded the case. Thereafter, defendant appealed from a judgment awarded to plaintiff on the pleadings, and in March, 1958, in 13 Ill.2d 258, we affirmed this judgment in part and reversed it in part and remanded the cause with directions. Our opinion detailed the substance of the plead-

ings and all prior proceedings leading to the appeal. In order to understand the errors assigned in the case at bar, reference to certain aspects of that opinion is necessary.

After such remandment, the trial court, on plaintiff's motion, redocketed the case and it was called for trial on June 16, 1958. No changes or amendments were made in the pleadings. The case was heard on plaintiff's amended complaint and defendant's second amended answer. At the outset of the trial, counsel for the parties entered into a stipulation establishing a chain of title from September 3, 1831, the date of original entry, to May 28, 1917, when the plaintiff, by deed, was vested with title to certain described lands which included the athletic field and the auditorium. They further stipulated that the property was thereafter platted and the plat filed for record, but counsel for defendant stated that it was not admitted that all lands shown on the plat are platted lands.

Plaintiff then produced three witnesses who testified to plaintiff's possession of the auditorium and athletic field prior to December 25, 1943, the date on which defendant admittedly entered into possession. Edward Houghton, president of plaintiff, testified that he attended camp at the park every year from 1904 to 1942, with the exception of 1916; that the plaintiff held programs in the auditorium in each of those years, with the exception of 1916 and 1919; and that during the same period the athletic field was used by members of the association for various athletic activities, including baseball and tennis. On cross-examination he admitted that defendant had rented the auditorium for several years prior to 1944, but had stopped paying rent at that time; that defendant had taken over a mortgage which covered certain parcels of the park property and then used and maintained the auditorium and athletic field; and that he had not seen the plaintiff use the auditorium since 1943.

Forest Hatch, vice president of plaintiff, testified that the plaintiff gave programs continuously from 1898 to 1942,

which were held in the auditorium; that until 1944, the plaintiff employed custodians, and it was their duty, among other things, to mow the athletic field. On cross-examination he stated that after 1944, defendant had hired custodians, made certain minor. repairs to the auditorium and kept the athletic field mowed; and that plaintiff had not held any. programs in the auditorium since 1942.

Mrs. Jerome Finkle, plaintiff's secretary, testified that the plaintiff had used the auditorium for programs continuously from 1900 to 1942, when the last program was held. She also stated that the athletic field had been used for ball games in 1943, 1944, and 1945, and that such use was discontinued after that time because the caretaker told her the church objected. When cross-examined, she admitted that the plaintiff had not used the auditorium since the foreclosure proceedings in 1943; that defendant had hired caretakers beginning in 1944 and plaintiff had hired none since that time; and that the understanding was that the church people were to use the auditorium in consideration for maintenance. The introduction of its deed, dated May 28, 1917, concluded plaintiff's evidence.

Thomas F. Zimmerman testified on behalf of defendant relative to conversations in 1942 with Will Luthringer, former president of plaintiff. Counsel for plaintiff objected and the court inquired of counsel for defendant the purpose of this line of interrogation. After counsel stated its purpose, the objection was sustained. Counsel for defendant then made an offer of proof that the witness would testify that Luthringer stated in February of 1942 that he would try to negotiate for the purchase of the premises, including the auditorium and athletic field; that in May of 1942 certain officers of defendant were taken over plaintiff's grounds by Luthringer who pointed out to them the premises which were subject to a mortgage to E. S. Waldmire; that about February, 1943, a master's deed was given in connection with the foreclosure of this mortgage; that

about that time Luthringer pointed out to defendant's officers that such purchase would include the auditorium and athletic field; that being so advised, defendant entered into a contract for deed with Ellen Tucker, the buyer of the premises at the foreclosure sale; that shortly after this contract was made, Luthringer handed over the keys to certain portions of the auditorium and delivered possession of it to defendant; that defendant entered into possession and ceased to pay rent after 1943; that plaintiff did not occupy the auditorium and athletic field after that time; that defendant immediately made repairs to the auditorium and did so annually; and that the plaintiff at no time thereafter made demand for or exercised any control over the auditorium or athletic field until the commencement of the ejectment proceedings in 1954.

The trial court held that such proof was improper in that the prior decision of this court had ruled out the defense of title in the defendant through the foreclosure proceeding, the defense of equitable estoppel, and the claim of a resulting or constructive trust. Defendant then made further offers of proof that W. R. Wilson and T. A. Kessel, if called as witnesses, would testify to the same facts as Zimmerman, and the trial court denied such offers.

Defendant then called Mrs. Jerome Finkle as an adverse witness, who testified concerning the making of the Waldmire mortgage, its foreclosure, and the attendant master's deed. The objection of plaintiff's counsel to this line of questioning was sustained. Defense counsel then made another offer of proof that if Mrs. Finkle were permitted to testify, she would state that plaintiff gave a certain mortgage to Waldmire, defaulted, and a master's deed was issued to Ellen Tucker; that the premises described in the deed and mortgage are identical; and that Ellen Tucker conveyed the premises by deed to defendant. After this offer of proof had been declined, defendant rested its case.

Defendant contends that the evidence fails to establish plaintiff's title and right to possession; that the court erred in refusing to admit the evidence offered on its behalf; and that the exclusion of that evidence deprived defendant of its property without due process of law in that defendant must be given fair and ample opportunity to be heard and thus enforce and protect its rights. Defendant also urges that the doctrine of estoppel is applicable and should have been enforced by the trial court.

The evidence established that plaintiff acquired title to lands which included those here in dispute by deed dated May 28, 1917, and the parties stipulated the existence of a continuous chain of title from the government to the date of that deed. When a particular title has been proved, the presumption is that title and ownership continue to exist as established until some change or alienation is shown. (*Dobroth* v. *Jensen,* 348 Ill. 157; *Kirk* v. *Kirk,* 325 Ill. 296; *Eggers* v. *Hardwick,* 155 Ill. App. 254.) This principle stems from the generally recognized rule of evidence that "when the existence of a person, a personal relation or state of things is once established by proof, the law presumes that the person, relation or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question." 20 Am. Jur. p. 205, par. 207; also see: 31 C.J.S. pp. 742, 743, par. 124b(3); Cleary, Handbook on Evidence, p. 76, par. 6.9.

Thus, the presumption prevailed in favor of the validity of plaintiff's title and the subserviency of defendant's possession to that title until overcome by evidence to the contrary. (*Augustus* v. *Lydig,* 353 Ill. 215, 220.) There is no evidence of any transfer or conveyance by plaintiff of the two parcels involved subsequent to May 28, 1917, and the presumption is that its title, as established, continued to exist.

Plaintiff proved continuous use and possession of the disputed lands from May 28, 1917, to the date in 1943 when defendant admittedly entered, as well as prior use and possession from about 1898 to the date of the deed. In an action of ejectment, plaintiff may recover upon proof of a *prima facie* title which may be shown by proof of actual possession under a deed or other claim of ownership. (*Thompson* v. *McGrue,* 3 Ill.2d 168, 173 and 174; *Schillo* v. *Martin,* 397 Ill. 211, 216.) When such showing has been made, it devolves upon defendant to introduce evidence to overcome that title and *prima facie* right to possession. (*Schillo* v. *Martin,* 397 Ill. 211.) The proof in this case was sufficient to establish *prima facie* title and right to possession in the plaintiff. Defendants introduced no evidence to overcome the right and title shown to exist. Absent such proof, plaintiff was entitled to a judgment for possession.

However, defendant contends that if it had been allowed to make the proof offered on its behalf, plaintiff's *prima facie* case would have been overcome by a showing of title in defendant through the foreclosure proceedings and the Tucker deed, as well as by facts which would have warranted an application of the doctrine of equitable estoppel. This argument ignores the effect of the confession of error in cause No. 34162, November Term, 1956. We stated the effect of that confession of error in 13 Ill.2d 258, 264: "Defendant did not thus confess to plaintiff's title, as is now contended, but only that its second amended answer was insufficient at law to support its claim of title, and that the answer failed to allege facts upon which plaintiff's claim to title could be estopped. The issues created by the general denial of plaintiff's title and right to possession remained." At page 267, we further stated: "When it is considered that the previous answers filed failed to show defendant had a valid claim to title and possession to the athletic field and auditorium or to plead facts by which

to estop plaintiff's claim of title, and that such failures were confessed, we see no abuse of discretion in the refusal to permit further amendment."

Thus, when defendant confessed error in cause No. 34162, it confessed that the Waldmire mortgage, the master's deed and the Tucker deed did not operate to pass plaintiff's title to the athletic field and auditorium, and that the facts pleaded were insufficient to estop plaintiff from asserting its claim of title. The legal sufficiency of those defenses as set forth in the second amended answer was the very matter at issue on the first appeal, and the confession of error operated to remove them forever from the case. While those allegations remained in the second amended answer in the trial involved in this appeal, their legal sufficiency had already been determined and that adjudication was part of the settled law of the case. Any evidence offered in support of the allegations contained in that particular portion of the answer was improper and properly refused.

The remandment order in 13 Ill.2d 258 did not, and could not, revive that part of the answer which had already been adjudged legally insufficient to constitute a defense. After remandment, the only question remaining was the existence of title in plaintiff as put in issue by defendant's general denial. Upon the issue thus joined, defendant was entitled to make proof of any fact tending to show that plaintiff had no title, such as that the consideration for the deed upon which plaintiff based its title and right of entry was illegal, or that the deed was procured by fraud, or was invalid for any other reason. *Thompson* v. *McGrue*, 3 Ill.2d 168, 174.

But proof in support of the allegations of the answer asserting title in defendant by reason of the foreclosure proceedings and alleging an equitable estoppel was no longer proper. The trial court's denial of defendant's offer to prove matters not in issue and no longer a part of the case was not a denial of due process of law. While due

process embraces an opportunity to be heard and present evidence relevant to the issues involved, it does not require the admission in evidence of proof which is not germane to the issues made by the pleadings.

Defendant urges that plaintiff's failure to reply to the affirmative defenses of the second amended answer had the effect of admitting them, so that no proof of such facts was required. This, of course, assumes that those defenses were an effective and operative part of the answer upon remandment after the confession of error on the first appeal and that they constituted a good defense in law. The legal insufficiency of the defenses had already been confessed and there is no basis for such assumption.

The judgment of the circuit court of Menard County is affirmed.

*Judgment affirmed.*