*In re* MARRIAGE OF SONDRA M. VARCO, Petitioner-Appellant, and ROSS D. VARCO, Respondent-Appellee.

First District (3rd Division)   86—1160

Opinion filed July 8, 1987.

Mammas & Goldberg, Ltd., of Chicago (Jerry S. Goldberg and Evan James Mammas, of counsel), for appellant.

J. Roger Sewell, of Melrose Park, for appellee.

JUSTICE WHITE delivered the opinion of the court.

Petitioner Sondra Varco appeals an order denying her motion to vacate a judgment for dissolution of her marriage to respondent Ross Varco. She contends that the trial court erred in ruling on the motion without hearing testimony.

The parties, each represented by counsel and accountants, orally negotiated a property settlement and reduced their agreement to writing before the trial court on October 17, 1985. Petitioner and respondent both testified that they understood the terms of the settlement, that they considered those terms to be fair, and that they had entered into the agreement without duress. Judgment for dissolution, incorporating the settlement, was entered on November 7, 1985.

On November 14, 1985, petitioner filed a motion to vacate the judgment, alleging that she had negotiated the agreement under duress from respondent and his agents. Petitioner's supporting affidavit asserted that she had been intimidated by threatening and obscene phone calls, threatening notes left on the door of her home and on her daughter's car, and the presence of a suspicious car near her home on several occasions. The affidavit further stated that Donna Spilotro, a friend of both parties in this case, had informed petitioner that her husband, Dr. Pat Spilotro, was responsible for the threatening phone calls she received; that Mrs. Spilotro told petitioner, "My husband is carrying a grudge against you and feels justified in harassing you," and that Dr. Spilotro had told petitioner to "avoid problems" for herself and her husband by not making public their financial transactions with him. The affidavit also stated that Dr. Spilotro held petitioner responsible for the loss of gold and silver coins he had stored in the Varco home after his own home was destroyed by fire.

Petitioner subpoenaed Donna Spilotro and her daughter, Christine, to testify at the hearing on her motion to vacate. Respondent and the Spilotros, believing that petitioner regularly tape-recorded her conversations, filed motions for production of all tapes which included conversations with them. In addition, the Spilotros filed a motion to quash their subpoenas. On March 11, 1986, the trial court entered an order compelling petitioner to produce any tapes she had made of conversations with respondent or the Spilotros. Petitioner answered that she did not have any of the tapes demanded by the order.

The trial court heard arguments on the motions on April 8, 1986. At that hearing, counsel for petitioner clarified his client's answer to the court order; she asserted that she could not produce any tapes; she did not claim that no tapes existed. The court asked whether

there had been such tapes and what had been done with them. Counsel for petitioner stated that his client invoked her fifth amendment privilege against self-incrimination and would not answer the question. The Spilotros then renewed their motion to quash; that motion was granted. Respondent asked that petitioner's motion to vacate the judgment be denied because of her failure to produce the tapes. Counsel for petitioner said that his client would withdraw her invocation of the fifth amendment if that invocation barred her motion.

The court denied the motion to vacate, initially stating that "fear and confusion is not a valid reason for failing to tell the Court what the situation is," and that petitioner should have raised her claim of duress at a prior hearing. The court later stated that petitioner's motion was denied "simply because she asserted Fifth Amendment privileges." Petitioner contends that the court's denial of her motion without a hearing was a denial of due process and an abuse of discretion. We disagree.

■ Petitioner's due process claim is ill-founded, since a failure to receive evidence does not constitute a denial of due process. (*In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 501 N.E.2d 1015.) We therefore focus on petitioner's claim that the trial court's failure to hold an evidentiary hearing was an abuse of discretion.

■ This court has long held that motions may be decided on the basis of affidavits alone. (*Piper v. Reder* (1966), 70 Ill. App. 2d 141, 217 N.E.2d 487; *Dyke v. Petty* (1916), 198 Ill. App. 414.) We have found an exception to that general rule and required an evidentiary hearing in cases where a motion to vacate and its supporting affidavits make allegations sufficient to create a material issue of fact. (*In re Marriage of Giammerino* (1980), 81 Ill. App. 3d 998, 401 N.E.2d 1048.) In the instant case, petitioner's motion and affidavit were insufficient to qualify for that exception since she alleged no facts which would have supported a claim of duress against respondent. ·

■■ Threats by a nonparty do not ordinarily affect the validity of a contract. "The general rule in contract cases holds that the validity of the contract is not affected by the fact that its execution was induced by duress practiced by a third party, where the duress was not committed with the knowledge or consent of the obligee. This general rule has been applied to suits to set aside deeds, trust deeds, mortgages, certificates of acknowledgment, compromises and settlements of claims, and assignments, as well as in suits to annul marriages ***." (*Regenold v. Baby Fold, Inc.* (1977), 68 Ill. 2d 419, 439, 369 N.E.2d 858.) Application of the rule to the instant case would allow a claim of duress against respondent only if he knew of

or participated in the harassment of petitioner. However, none of the threats were alleged to have been made by or under the direction of respondent or to have mentioned the settlement between the parties; petitioner's affidavit in fact suggested that a third party was responsible for the threats for reasons of his own. Petitioner's factual allegations were thus insufficient to create an issue that would have required an evidentiary hearing for determination of her motion to vacate her settlement with respondent.

■ We therefore hold that the trial court's denial of petitioner's motion without a hearing was proper. We need not address the reasons given by the trial court for its ruling, since a reviewing court may sustain a judgment on any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.

Accordingly, we affirm the order of the circuit court of Cook County.

Order affirmed.

RIZZI, J., concurs.

JUSTICE FREEMAN, dissenting:
I would hold that the appellant was entitled to an evidentiary hearing on her motion to vacate and therefore would reverse and remand this matter for such a hearing.

The appellant filed her motion to vacate on November 14, 1985, only seven days after the entry on November 7, 1985, of the judgment for dissolution of marriage. This filing was well within the 30-day statutory period. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1203(a).) Similarly, in *In re Marriage of Giammerino* (1980), 81 Ill. App. 3d 998, 401 N.E.2d 1048, this court granted a motion to vacate filed 26 days after the entry of a judgment for dissolution of marriage. Therefore, the filing of the motion in this matter seven days after judgment was timely.

Further, there likely occurred a due process violation as a result of the trial court's refusal to grant a hearing in this case. The Illinois Supreme Court has discussed the standard for determining whether the right to be heard has been protected:

" 'While due process embraces an opportunity to be heard and present evidence relevant to the issues involved, it does not

require the admission in evidence of proof which is not germane to the issues made by the pleadings.' " *Rhodes v. Anderson* (1976), 39 Ill. App. 3d 208, 210, 349 N.E.2d 113, 115, quoting *Old Salem Chautauqua Association v. Assembly of God* (1959), 16 Ill. 2d 470, 477-78, *cert. denied* (1959), 361 U.S. 864, 4 L.Ed. 2d 104, 80 S. Ct. 123.

Appellant raises a question sufficiently germane to the issues in the pleadings of this cause where she alleges that she was coerced into entering the marital settlement agreement. Therefore, appellant should be allowed to present evidence in support of her allegations.

Additionally, this court previously has held that "[a]n evidentiary hearing, including the right to present witnesses and engage in cross-examination, must be given if properly requested in domestic relations cases. [Citations.]" (*In re Marriage of Giammerino* (1980), 81 Ill. App. 3d 998, 999, 401 N.E.2d 1048, 1049.) Failure to grant a hearing when properly requested constitutes error. (81 Ill. App. 3d 998, 999, 401 N.E.2d 1048, 1049.) Appellant's motion to vacate and accompanying affidavits sufficiently allege circumstances which require an evidentiary hearing to determine whether the judgment for dissolution of marriage should be set aside. Appellant is entitled to an evidentiary hearing on whether she entered into the marital settlement agreement while under duress or coercion. We note here that the marital settlement agreement was entered orally in open court on October 17, 1985, and formed the basis for the November 7, 1985, judgment for dissolution of marriage.

The majority opinion provides that, in any event, a claim of duress in this case would fail since none of the threats were alleged to have been made by or under the direction of the respondent. In this regard, the majority relies on the general rule that the validity of a contract is not affected by the fact that its execution was induced by duress practiced by a third party, where the duress was not committed with the knowledge or consent of the obligee. *Regenold v. Baby Fold, Inc.* (1977), 68 Ill. 2d 419, 439, 369 N.E.2d 858, *appeal dismissed* (1978), 435 U.S. 963, 56 L. Ed. 2d 54, 98 S. Ct. 1598.

The instant case, however, fits into the exception to the general rule carved out by the *Regenold* court. The exception provides that in certain extreme situations, duress *from whatever source* may render a transaction void. (68 Ill. 2d 419, 439-40, 369 N.E.2d 858.) The *Regenold* court suggested that such an extreme situation may arise, for example, in an adoption proceeding where the natural father of the child threatens to kill both the child and the mother unless she surrenders the child for adoption. In such a case, *Regenold* provides,

"[the] court, *** in the exercise of its equity authority, [must act] to protect the interests of all parties." 68 Ill. 2d 419, 440, 369 N.E.2d 858.

Further, this court in *In re Marriage of Moran* (1985), 136 Ill. App. 3d 331, 483 N.E.2d 580, held that the petitioner's motion to vacate the judgment dissolving her marriage with the respondent should have been granted where the petitioner's attorney and the trial court coerced her to enter the marital settlement agreement. In reversing the trial court's denial of the motion to vacate, this court in *Moran* cited section 502(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 502(b)), which provides for the setting aside of an unconscionable marital settlement agreement. *Moran* dictates a fairly broad reading of section 502(b). The opinion states that while section 502(b) uses the term "unconscionable," that language does not eliminate other traditional grounds for setting aside settlement agreements, including fraud, duress, coercion and violation of any rule of law, public policy or morals. 136 Ill. App. 3d 331, 336, 483 N.E.2d 580, 584.

In the instant case, appellant has alleged that a telephone call she received on October 16, 1985, just prior to the entry of the oral settlement agreement, threatened the life and safety of her and her children. Appellant alleges that the caller advised her to "remember what happened to Butch." "Butch," appellant asserts, was a reputed member of the crime syndicate and a patient at her husband's dental office whose body was found in the trunk of an automobile with his face having been blowtorched. This allegation, together with appellant's allegations regarding other threatening telephone calls and notes and the presence of a suspicious car, allegedly registered to a friend of Dr. Pat Spilotro, supports the conclusion that an evidentiary hearing should be held regarding the marital settlement agreement.