(No. 23681.—

ORA C. BAIAR, Admr., Appellant, *vs.* WILLIAM L. O'CONNELL, Receiver, Appellee.

*Opinion filed December 16, 1936—Rehearing denied Feb. 4, 1937.*

FARTHING and WILSON, JJ., dissenting.

D. L. DUTY, L. A. COLP, and STONE & FOWLER, for appellant.

WARFORD & FRANKLIN, for appellee.

Mr. JUSTICE SHAW delivered the opinion of the court:

Leave to appeal having been granted, this cause is here for a review of the judgment of the Appellate Court for the Fourth District.

The Citizens State Bank of Johnston City, Illinois, was closed by the State Auditor on April 10, 1930. Six days prior thereto, on April 4, 1930, John A. Baiar delivered to the cashier of that bank two certificates of deposit, one for the sum of $10,875 and the other for $700, to be used for the purchase of United States liberty bonds. A receipt therefor was delivered by the bank signed by its cashier, and this cashier, L. D. Hobbs, testified in respect thereto on the intervening petition of Baiar's administrator seeking a preference in the receivership. Hobbs testified that the certificates were delivered to him for the purchase of liberty bonds but the bank had closed before it really had time to get them. It was his testimony that it had been a custom of the bank for at least eighteen years to purchase liberty bonds for its customers upon request and that the bank had so handled several hundred thousand dollars in that form of security. The trial court allowed the claim

preferential standing to the extent of participating in the distribution of the lowest amount of cash on hand in the bank between the date of the receipt and the date the bank closed. This judgment was reversed by the Appellate Court, holding that the claim could not be preferred and that Baiar's administrator was simply an unsecured creditor.

In *People* v. *Farmers State Bank,* 338 Ill. 134, we pointed out the distinctions between the two kinds of bank deposits—*i. e.,* special and general; that the former include those where the bank becomes a trustee for the depositor by special agreement or under circumstances sufficient to create a trust, whereas general deposits are those where the bank merely becomes the debtor of the depositor. We there pointed out that as to general deposits the title to the money deposited passes to the bank, becoming a part of its assets, and in case of insolvency of the bank the general deposit belongs to the creditors in proportion to the amount of their respective claims. We also pointed out in that opinion that as a rule when money is deposited in a bank the title to the money passes to the bank, and noted certain well-recognized exceptions to that rule. Those exceptions, as we then stated them, were: First, where the money or thing deposited is placed with the bank under an agreement that that particular money or thing shall be returned to the depositor; second, where the money or thing deposited is to be used for a specifically designated purpose; and third, where the deposit itself was wrongful or unlawful. What we said in the *Farmers State Bank case* has since been reiterated and re-affirmed in the later cases of *People* v. *Peoples State Bank of Maywood,* 354 Ill. 519, and *People* v. *Stony Island Savings Bank,* 358 id. 118. We think it may safely be said, without further citation of authority, that the rule thus laid down is generally established and accepted. The rule is, that when a preference of this particular sort is claimed it must be founded upon a claim of title to the funds and not based upon the relationship of debtor and creditor. Our

inquiry will therefore be directed to a determination of the title to the funds in question.

Appellant relies strongly on the case of *People* v. *Bates,* 351 Ill. 439, claiming that it is controlling in this case. In the *Bates case* a sum in excess of $4700 was collected by the Schuyler State Bank of Pana, Illinois, in the form of proceeds from a real estate mortgage remitted to the Schuyler Bank by the Seaboard Bank of New York. The money was received and mingled with the other funds of the Schuyler Bank, and the bank gave Mrs. Bates a receipt for the $4700 reciting on its face that it was to be invested in mortgage loans. As a matter of book-keeping, and for its own convenience, the Schuyler Bank made out a certificate of deposit in Mrs. Bates' name which it kept in the bank and the existence of which was entirely unknown to Mrs. Bates. It was held in that case that the money augmented the assets of the bank; that it constituted a trust fund of which Mrs. Bates was the *cestui que trust;* that the fund itself could be traced, and that it was unnecessary to trace the exact coin or money which made it up. Mrs. Bates never was, and never intended to be, a creditor of the bank, which became insolvent, and the holding in the *Bates case* is clearly within the rules we have above set forth from the *Farmers State Bank case.* The case is not in point on the issues now before us.

Appellant says, however, that the situation is the same as though Baiar had cashed the certificates of deposit on April 4, 1930, and then handed the money back through the window with instructions to buy liberty bonds, and says that under those circumstances a trust would unquestionably have arisen entitling appellant to a preference. On this branch of the case he relies upon certain language in *People* v. *Peoples Bank and Trust Co.* 353 Ill. 479. The facts in the *Peoples Bank and Trust Co. case* last cited are in no way similar to those disclosed by the record now before us. In that case Tolmie Bros. sent their check for

$10,000 to the American Terrazzo and Tile Company, which that company deposited in the First National Bank of Springfield for collection and remittance. The Springfield bank forwarded it to the Peoples Bank and Trust Company at Rockford with a partial waiver of lien attached and with instructions that the waiver of the lien was to be delivered upon payment of the check. The Peoples Bank and Trust Company at Rockford honored the check and charged it to the account of Tolmie Bros., but instead of remitting in cash to the Springfield bank sent a draft upon the First National Bank of Chicago payable to the order of the Springfield bank. Before the Springfield bank could collect the draft the Rockford bank closed. In that case we held that the check was discharged by payment when the Rockford bank charged it to the account of Tolmie Bros.; that the relation between the Terrazzo company and the Rockford bank was that of principal and agent, and that the Terrazzo company had never elected to become a creditor of the Rockford bank nor to change the relationship of principal and agent, and that the money in the hands of the Rockford bank after payment of the check was a trust fund, of which the Terrazzo company was *cestui que* trustee.

The case of *Blakey* v. *Brinson,* 286 U. S. 254, 76 L. ed 1089, 52 Sup. Ct. 516, 82 A. L. R. 1288, applies to the point before us and in many respects is much stronger in favor of the depositor, so far as the facts are concerned, than the one we are now considering. In that case the depositor maintained a savings account with the bank which contained more than $1900. On October 24, 1929, he agreed with an officer of the bank that the bank should purchase $4000 of United States bonds for him, it being understood that the bank would send to Richmond for them and that he should bring such additional amount of money to the bank as would be required. Pursuant to that agreement the depositor drew a check for $2100 upon another bank which he deposited in his savings account, which increased

his credit balance to $4061.31. The next day an officer of the bank notified the depositor that the bonds had been ordered and four days later told him that the bonds had arrived, and gave him a charge slip showing the principal, accrued interest and commission on the transaction. Two days later the bank debited the depositor's savings account with the amount shown by this bond transaction and credited him with a like amount as a deposit in a bond account which appeared on the bank's books. When the bank closed, less than a week later, it was discovered that no bonds had, in fact, been purchased, ordered or received. On these facts the United States Supreme Court pointed out that it would have been equally competent for the depositor to provide for the purchase of the bonds by the creation of a trust fund in the hands of the bank to be used for that purpose, or by establishing with it a credit to be debited with the cost of the bonds when purchased, but that the establishment of the trust fund was the only method which could protect the depositor from the bank's insolvency. It was held that the relationship between the bank and the depositor which was established by his savings account was from its inception that of debtor and creditor; that the deposit of the additional check did not alter the relationship between the parties, it being clearly the intention that the additional deposit should be added to the savings account and treated like it. The court held that the cancellation of the credit balance by debit neither suggested any intention to establish a trust nor pointed to any identifiable thing which could be the subject of it, and disallowed the claim for preference.

Of similar import and likewise in point is the case of *Norling & Bloom Co.* v. *Exchange Trust Co.* 193 N. E. 1, from the Supreme Judicial Court of Massachusetts. In that case the plaintiff sought to establish a preference on the following facts: The trust company maintained a foreign exchange department and plaintiff entered into certain

contracts with the trust company for the purchase of foreign exchange. On April 15, 1932, plaintiff delivered its check to the trust company, drawn upon the same company for the sum of $2000, which bore upon its face words indicating that it was a deposit for the purchase of the exchange mentioned in the contract. It was agreed that the plaintiff would give his separate check as to each separate contract, and that when the entire matter was complete the deposit of $2000 was to be returned. The trust company entered into an agreement with the First National Bank of Boston for the delivery of the guilders contracted for, but on April 25 the commissioner of banks took possession of the trust company for liquidation before the First National Bank of Boston made any delivery of the guilders. The Massachusetts court held that the facts thus established showed that the plaintiff intended to, and did, establish a credit with the bank as security for the payment of the price of the guilders as and when purchased. It was held that the bank became the owner of the check when it was delivered and of its proceeds when collected, and that the relationship between the parties was that of debtor and creditor, entitling the plaintiff to no preference over other unsecured creditors. The case cites *Blakey* v. *Brinson, supra,* and many other cases. On the same day the opinion in the Massachusetts case was filed the Supreme Court of Ohio filed its opinion in *Fulkon* v. *Escanaba Paper Co.* and *Fulkon* v. *University of Dayton,* 129 Ohio St. 90, 193 N. E. 758, in which the Ohio court followed the rules announced by the United States Supreme Court and the Supreme Judicial Court of Massachusetts in the cases above cited.

We think the holdings in these cases are consistent with the rules previously announced by this court and must prevail in deciding the present litigation. The original relationship between Baiar and the Citizens State Bank was that of debtor and creditor, and necessarily so remained unless changed. The debt was never discharged by payment or

otherwise, and the only agency created was one to buy bonds, the exact number, series, interest rates and amount not being determined. The most that can be said of this transaction is, that the debtor promised that within a reasonable time it would liquidate its indebtedness to Baiar, and that it would do this by applying its own indebtedness to him to the purchase of bonds and would later deliver these bonds to him. No specific fund was ever provided for this purpose nor was any money segregated or set apart. Neither was anything traced into the bank's assets which could be the subject matter of a trust, as in the *Bates case, supra.* It is fundamental that a debtor cannot be trustee of his own debt for his creditor, (*Marble v. Estate of Marble,* 304 Ill. 229; Re-statement of Law of Trusts, par. 87;) yet such would be the case were the claimant allowed a preference on the record before us.

The Appellate Court arrived at a correct conclusion, and its judgment will be affirmed. *Judgment affirmed.*

FARTHING and WILSON, JJ., dissenting.