NOTICE

Decision filed 07/16/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0456

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| STEPHEN T. MALEC, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) St. Clair County. |
| | ) |
| v. | ) No. 06-MR-45 |
| | ) |
| THE CITY OF BELLEVILLE, ILLINOIS, an | ) |
| Illinois Municipal Corporation, | ) |
| GREEN MOUNT DEVELOPMENT, LLC, a | ) |
| Missouri Limited Liability Company, and | ) |
| GMCR, LLC, a Missouri Limited Liability | ) |
| Company, | ) Honorable |
| | ) Andrew J. Gleeson, |
| Defendants-Appellees. | ) Judge, presiding. |

_____

JUSTICE SPOMER delivered the opinion of the court:

The plaintiff, Stephen T. Malec, appeals the order of the circuit court that granted the motion for a judgment on the pleadings filed by the defendants, the City of Belleville (the City) and Green Mount Development, LLC, and GMCR, LLC (the Developers), and dismissed the plaintiff's first amended complaint. On appeal, we are called upon to decide whether a citizen and taxpayer of the City has standing to challenge, via a complaint for declaratory and injunctive relief, the following: (1) the City's formation of a tax-increment-financing (TIF) district pursuant to the Tax Increment Allocation Redevelopment Act (the TIF Act)–section 11-74.4-1 *et seq.* of the Illinois Municipal Code (65 ILCS 5/11-74.4-1 *et seq.* (West 2004))–and the resulting payment of property tax funds from the TIF district to the Developers pursuant to the TIF Act–section 11-74.4-8 of the Illinois Municipal Code (65 ILCS 5/11-74.4-8 (West 2004)), (2) the City's imposition of a sales tax pursuant to section 11-74.3-3(12) of the Illinois Municipal Code (65 ILCS 5/11-74.3-3(12) (West 2006)) and the

1

resulting payment of the revenue from that tax to the Developers, and (3) the City's making of an economic incentive agreement with the Developers pursuant to section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004)) and the resulting payment of the City's sales tax revenues from the redevelopment area to the Developers. For the reasons set forth below, we reverse the order of the circuit court that granted a judgment on the pleadings in favor of the City and the Developers and dismissed the plaintiff's first amended complaint, and we remand for further proceedings not inconsistent with this opinion.

FACTS

The plaintiff was granted leave and filed a six-count first amended complaint (complaint) against the City and the Developers on April 26, 2006. The complaint alleges that the plaintiff resides in the City, owns property and pays property taxes to the City, shops in the City, and pays the sales taxes collected by the State of Illinois on behalf of the City. According to the complaint, as a taxpayer, the plaintiff has an equitable interest in tax funds and has standing to bring an action to prevent his equitable interest in public resources from being used for an illegal purpose.

The complaint alleges that on January 11, 2006, the City adopted a group of ordinances that provided for, *inter alia*, the following: (1) the formation of a TIF district pursuant to the TIF Act–division 74.4 of the Illinois Municipal Code (65 ILCS 5/11-74.4-1 *et seq.* (West 2004)), (2) the formation of a business district pursuant to division 74.3 of the Illinois Municipal Code (65 ILCS 5/11-74.3-1 *et seq.* (West 2006)), (3) the approval of a redevelopment plan pursuant to the TIF Act–section 11-74.4-4 of the Illinois Municipal Code (65 ILCS 5/11-74.4-4 (West 2004))–and section 11-74.3-3 of the Illinois Municipal Code (65 ILCS 5/11-74.3-3 (West 2006)), (4) the approval of tax increment allocation financing to reimburse the Developers for project redevelopment costs pursuant to the TIF Act–section 11-74.4-8 of the Illinois Municipal Code (65 ILCS 5/11-74.4-8 (West 2004)), (5) the

imposition of a business district tax to reimburse the Developers for project redevelopment costs pursuant to section 11-74.3-3(12) of the Illinois Municipal Code (65 ILCS 5/11-74.3-3(12) (West 2006)), and (6) the authorization for the use of general sales tax revenues, in addition to the TIF and business district tax financing, to reimburse the Developers for project development costs through an economic incentive agreement pursuant to section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004)). According to the complaint, the purpose of these ordinances was to aid the Developers in developing a Wal-Mart store, a Lowe's Home Improvement Center, a housing development, and a strip center in the City by spending more than $27 million in the above-enumerated tax funds to reimburse the Developers for project costs.

Count I of the complaint alleges that the formation of the TIF district and resulting tax increment financing violated the provisions of the TIF Act because, *inter alia*, the land included within the TIF district did not qualify as "blighted" as that term is defined in the TIF Act–section 11-74.4-3(a) of the Illinois Municipal Code (65 ILCS 5/11-74.4-3(a) (West 2004)). Specifically, count I alleges that areas designated in the redevelopment plan as "vacant" were in fact in agricultural production and, thus, do not meet the definition of "blight" set forth in the TIF Act (65 ILCS 5/11-74.4-3(a), (v) (West 2004)). Count II alleges that the imposition of a sales tax pursuant to section 11-74.3-3(12) of the Illinois Municipal Code (65 ILCS 5/11-74.3-3(12) (West 2006)) violated the provisions of section 11-74.3-5(3) of the Illinois Municipal Code (65 ILCS 5/11-74.3-5(3) (West 2006)) because, *inter alia*, the business district did not qualify as "blighted." Additionally, in counts I and II the plaintiff alleges that the TIF and the business district violate the TIF Act and division 74.3 of the Illinois Municipal Code because there is reason to believe that the area of the TIF and business district would develop in the absence of tax increment financing and the imposition of a business district sales tax. See 65 ILCS 5/11-74.4-3(n), 11-74.3-5(3)(i) (West 2006).

3

Count III alleges that several procedural and substantive defects with the approval of the redevelopment agreement violated section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004)), making the resulting economic incentive agreement, which allows the City to share general sales tax revenues with the Developers, illegal. The plaintiff prays that the court declare all the ordinances invalid and enjoin the City from expending public funds to carry out their terms.

On June 26, 2006, counts IV through VI of the complaint were dismissed, and the plaintiff does not appeal that dismissal. On April 24, 2007, the City and the Developers filed a motion for a judgment on the pleadings pursuant to section 2-615(e) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2006)) on the basis that the plaintiff lacks standing to assert the claims set forth in the complaint. On July 17, 2007, after hearing oral argument, the circuit court granted the motion for a judgment on the pleadings and dismissed the plaintiff's complaint. On August 13, 2007, the plaintiff filed a timely notice of appeal.

ANALYSIS

"The standard of review for reviewing a trial court's decision to grant a motion for judgment on the pleadings is *de novo*." *Country Mutual Insurance Co. v. Carr*, 372 Ill. App. 3d 335, 339 (2007). In addition, "the issue of standing is a matter of law and therefore properly subject to *de novo* review." *Dimensions Medical Center, Ltd. v. Advanced Ambulatory Surgical Center, Inc.*, 305 Ill. App. 3d 530, 534 (1999). "It is established that a taxpayer can enjoin the misuse of public funds, based upon taxpayers' ownership of such funds and their liability to replenish the public treasury for the deficiency caused by misappropriation thereof." *Martini v. Netsch*, 272 Ill. App. 3d 693, 695 (1995) (citing *Feen v. Ray*, 109 Ill. 2d 339, 344 (1985), *Snow v. Dixon*, 66 Ill. 2d 443, 450-51 (1977), *Turkovich v. Board of Trustees of the University of Illinois*, 11 Ill. 2d 460, 464 (1957), and *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 160 (1956)). "Consequently, a taxpayer has

4

standing to bring suit, even in the absence of a statute, to enforce the equitable interest in public property which he claims is being illegally disposed of." *Martini*, 272 Ill. App. 3d at 696 (citing *Metropolitan Sanitary District of Greater Chicago ex rel. O'Keeffe v. Ingram Corp.*, 85 Ill. 2d 458, 476 (1981), and *Paepcke v. Public Building Comm'n of Chicago*, 46 Ill. 2d 330, 341 (1970)).

Here, the City and the Developers present three reasons that the plaintiff lacks standing to challenge the expenditure of the funds at issue in the complaint. The first argument is that the plaintiff does not own property or a business in the TIF or business district where the taxes at issue will be levied and expended. We find this fact inconsequential to our standing analysis. The plaintiff is a taxpayer of the City, and the TIF and the business district were created by, and are located within, the City. Accordingly, if the actions of the City have an impact on the general revenue of that City, then the plaintiff has standing to challenge those actions pursuant to aforementioned authority.

Second, the City and the Developers argue that because the sources of revenue that the City is expending are not general revenue sources, the plaintiff lacks standing to challenge their expenditure. In support of their position, the City and the Developers cite three Illinois Supreme Court cases. In *Price v. City of Mattoon*, 364 Ill. 512, 513 (1936), taxpayers filed suit to enjoin a municipality from financing and developing a waterworks purchase-and-improvement program. The Illinois Supreme Court noted that "the indebtedness created [by the program] was to be paid solely out of revenue derived from the sale of water to consumers and not out of any tax or taxes levied or to be levied," and the court therefore concluded, "[N]o liability attaches to the general public funds of the city and no special tax liability is created[;] hence a tax[]payer would have no right to interfere." *Price*, 364 Ill. at 514. In *Golden v. City of Flora*, 408 Ill. 129, 130 (1951), taxpayers filed suit to challenge an ordinance that permitted the city to enter into a collective bargaining

5

agreement with a labor union representing the employees of the municipally owned and operated light, water, and sewage disposal systems. The Illinois Supreme Court, citing *Price*, held that the taxpayers lacked standing to challenge the ordinance because the wages involved did not come from tax funds, but from the revenue of the utility involved. *Golden*, 408 Ill. at 131.

In *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 158-59 (1956), the case on which the City and the Developers most heavily rely, businesses that were liable to pay unemployment compensation contributions filed a complaint seeking to enjoin the payment of unemployment compensation to unemployed workers who received private supplemental payments from their former employers. The Illinois Supreme Court held that the businesses lacked standing as taxpayers to seek that relief. *Barco*, 10 Ill. 2d at 161. In so holding, the court, again citing *Price*, reasoned as follows:

"It is clear that the fund in question is not a general public fund; nor is it a part of the general State revenue; and the involuntary contributions thereto are not general taxes. It is rather a trust fund composed of contributions made by employers. [Citations.] The distinction between misappropriation of funds out of the general revenue and out of such trust fund is clearly set out in our decisions. The illegal expenditure of general public funds may always be said to involve a special injury to the taxpayer not suffered by the public at large. However, when the expenditure involved is from a trust fund, the petitioner must show a special injury not common to the public generally." *Barco*, 10 Ill. 2d at 161.

We find *Price*, *Golden*, and *Barco*, all of which deal with challenges to the expenditure of non-tax revenue, to be distinguishable from the case before us. Here, the plaintiff, as a taxpayer of the City, is challenging the levying and expenditure of property and sales taxes by the City. In count I, the plaintiff is challenging the City's formation of a TIF

6

district pursuant to the TIF Act–division 74.4 of the Illinois Municipal Code (65 ILCS 5/11-74.4-1 *et seq.* (West 2004))–and the resulting payment of property tax funds from the TIF district to the Developers pursuant to the TIF Act–section 11-74.4-8 of the Illinois Municipal Code (65 ILCS 5/11-74.4-8 (West 2004)). In count II, the plaintiff is challenging the City's imposition of a sales tax imposed pursuant to section 11-74.3-3(12) of the Illinois Municipal Code (65 ILCS 5/11-74.3-3(12) (West 2006)) and the resulting payment of the revenue from that tax to the Developers. In count III, the plaintiff is challenging the City's making of an economic incentive agreement with the Developers pursuant to section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004)) and the resulting payment of the City's sales tax revenues from the redevelopment area to the Developers. We find that property and sales taxes are parts of the general revenue of the City whether or not they are earmarked for a specific purpose or placed into a special account. To hold otherwise would be to extend the holding in *Barco* so that tax revenue could be insulated from a taxpayer action by the simple act of segregation. We decline to extend the holding in *Barco* in the manner urged by the City and the Developers.

Finally, the City and the Developers argue that the plaintiff lacks standing to challenge the expenditure of the funds at issue in the complaint because the property and sales tax funds at issue are only those that will be generated by the development project itself. The crux of the City and the Developers' argument in this regard is that the funds at issue represent those property and sales tax increments which, but for the creation of the TIF and the business district, would not otherwise exist. The City and the Developers argue that because the funds would not exist but for the creation of the TIF and the business district, the revenues are not general revenues and a taxpayer of the City does not have standing to challenge their expenditure. This argument begs the question raised by the plaintiff's challenge. One of the reasons the plaintiff alleges that the TIF and the business district are

7

not "blighted" within the meaning of the Illinois Municipal Code is that there is reason to believe that the area of the TIF and the business district would develop in the absence of tax increment financing and the imposition of a business district sales tax to reimburse the Developers for project costs. If the plaintiff's challenge has merit and the area at issue would develop absent the expenditure of these property and sales taxes to reimburse the Developers for project costs, then the impact on the general funds of the City becomes apparent. If the area would eventually develop absent the TIF and the business district, then all the property and general sales tax revenue from that area would be available as general revenue of the City rather than to reimburse the Developers. In addition, there would be no need to impose an additional sales tax pursuant to section 11-74.3-3(12) of the Illinois Municipal Code (65 ILCS 5/11-74.3-3(12) (West 2006)), which may itself deter patrons from shopping or receiving services in that area. Accordingly, we hold that a taxpayer of a municipality has standing to challenge that municipality's exercise of taxing and spending power under the TIF Act and division 74.3 of the Illinois Municipal Code as well as its making of an economic incentive agreement pursuant to section 8-11-20 of the Illinois Municipal Code.

CONCLUSION

For the foregoing reasons, the order of the circuit court that granted a judgment on the pleadings in favor of the City and the Developers and dismissed the plaintiff's complaint is reversed, and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed; cause remanded.

WELCH and WEXSTTEN, JJ., concur.

8

NO. 5-07-0456

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

STEPHEN T. MALEC,                    ) Appeal from the
                                            ) Circuit Court of
    Plaintiff-Appellant,           ) St. Clair County.
                                            )
v.                                            ) No. 06-MR-45
                                            )
THE CITY OF BELLEVILLE, ILLINOIS, an   )
Illinois Municipal Corporation,         )
GREEN MOUNT DEVELOPMENT, LLC, a    )
Missouri Limited Liability Company, and   )
GMCR, LLC, a Missouri Limited Liability  )
Company,                             ) Honorable
                                            ) Andrew J. Gleeson,
    Defendants-Appellees.         ) Judge, presiding.
_____

**Opinion Filed**:      July 16, 2008
_____

**Justices**:      Honorable Stephen L. Spomer, J.

                Honorable Thomas M. Welch, J., and
                Honorable James M. Wexstten, J.,
                Concur
_____

**Attorneys**    John M. Myers, Rabin, Myers & Hanken, 1300 South Eighth Street, Springfield, IL
**for**         62703; Penni S. Livingston, Livingston Law Firm, 5701 Perrin Road, Fairview
**Appellant**  Heights, IL 62208
_____

**Attorneys**    Bradley A. Winters, Daniel Sakaguchi, Sonnenschein, Nath & Rosenthal, LLP, One
**for**         Metropolitan Square, Suite 3000, St. Louis, MO 63102; Robert J. Sprague, Sprague
**Appellees**  & Urban, 26 E. Washington Street, Belleville, IL 62220
_____