# Illinois Official Reports

## Appellate Court

---

### *Warga v. Warga*, 2015 IL App (1st) 151182

---

| | |
|---|---|
| Appellate Court Caption | GEORGE F. WARGA, a Disabled Person, By and Through His Guardian, Joseph Warga, Respondent-Appellee, v. LAIMA WARGA, Petitioner-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-1182 |
| Filed | December 4, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-P-5895; the Hon. Ann Collins-Dole, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Office of Robert Blinstrubas, P.C., of Chicago (Mitchell Miller, of counsel), for appellant.<br><br>Monahan Law Group, LLC, of Chicago (John W. Whitcomb, Amy E. McCarty, and Joseph T. Monahan, of counsel), for appellee. |
| Panel | JUSTICE DELORT delivered the judgment of the court, with opinion.<br>Justices Hoffman and Hall concurred in the judgment and opinion. |

**OPINION**

¶ 1 In *Karbin v. Karbin*, 2012 IL 112815, our supreme court held that a guardian may seek court permission to bring a marriage dissolution action on behalf of a ward, and overruled the contrary rule previously established in *In re Marriage of Drews*, 115 Ill. 2d 201 (1986). The General Assembly codified *Karbin* shortly thereafter, through a 2014 amendment to the Probate Act of 1975 (Act). See Pub. Act 98-1107, § 5 (eff. Aug. 26, 2014) (amending 755 ILCS 5/11a-17(e) (West 2012)). The *Karbin* court's opinion, and the Act, set forth certain procedural and substantive safeguards to protect the ward. Among those safeguards is the requirement that a circuit court considering a petition to file for dissolution of marriage hold a hearing to determine whether dissolution is in the ward's best interests. In this case, we consider an issue of first impression: whether, under *Karbin* and the Act, a ward's nonguardian spouse has standing to participate at the best interests hearing.

¶ 2                                                    BACKGROUND

¶ 3 George Warga, the ward, was born in 1924 and is currently 91 years old. When George's first wife became ill, he hired a nurse, Laima Bacanskas, to help care for her. George's first wife died in 2000, but George continued to retain Laima to help with household duties. In 2006, George and Laima married. George has no children by either marriage.

¶ 4 On October 11, 2012, Cathleen Warga Cascia, George's niece, filed a petition for appointment of guardian for disabled person for George, nominating Joseph Warga, George's brother, to be the guardian of the person. Laima was named in the petition as an interested person, but she did not challenge the petition at that time. George was alleged to be disabled due to dementia and depression. The court appointed Joseph as temporary guardian pending further proceedings.

¶ 5 On December 14, 2012, Laima filed a cross petition for appointment of guardian for disabled person and nominated her son by a previous relationship, Tomas Bekeris, to be the guardian of George's person and estate. The court denied Laima's petition and granted Cathleen's petition. The court appointed Joseph as the plenary guardian of George's person and The Northern Trust Company as the plenary guardian of George's estate.

¶ 6 George has resided at an assisted living facility since April 2012. On February 4, 2014, Laima filed a motion for visitation with her husband George. She claimed that they used to have periodic visits, but after her annual trip to Lithuania from June 2013 to August 2013, George said he no longer wished to see her. The court denied Laima's motion for visitation.

¶ 7 On November 21, 2014, George appeared in court for a scheduled court date, during which he asked to address the court. During his remarks, he told the judge: "I would like to disassociate myself from Laima in any way that I can. I just want her out of my life. We are not compatible in the least bit. There's never any pleasure between our relationship. It was just business, and it will never be more than that." He reiterated this point several times throughout his remarks. He also claimed that he did not like how Laima requested money and claimed that she was using it to support her son Tomas. George said that if possible, he did not ever want to see Laima again. At the end of his remarks, George stated that he wanted the court to appoint an attorney for him so that he could pursue a divorce.

¶ 8        On February 11, 2015, George, through appointed counsel, filed a motion to authorize retention of divorce counsel to pursue a dissolution of marriage on his behalf. Joseph later joined in this motion.

¶ 9        On February 20, 2015, the trial court held a preliminary hearing to determine the parameters of the best interests hearing, during which it would assess whether it was in George's best interests to initiate dissolution proceedings. Although Laima was allowed to participate during the preliminary hearing, the court ultimately determined that the only parties with standing to participate in the final best interests hearing would be: (1) George's guardian *ad litem*; (2) Joseph, as guardian of George's person; (3) Northern Trust, as guardian of George's estate; and (4) George's attorney.

¶ 10       The court conducted the best interests hearing on February 25, 2015. At that time, Laima's counsel appeared and presented a motion to reconsider the earlier order barring her from participating and a motion for substitution of judge for cause. The court denied the motions based on lack of standing, but nonetheless offered Laima the opportunity to testify as an interested party, which her counsel declined.

¶ 11       At the hearing, Joseph testified that he visits with his brother George several times a week and that George brings up the topic of divorcing Laima during almost every visit. According to Joseph, divorcing Laima seems "very important" to George. Elaborating, he explained that George "gets very emotional [and] derides himself because he regards his marriage a terrible mistake on his part and on his wife's part." Joseph also testified that he believes it is in George's best interests to get a divorce, and he is afraid the entire situation is affecting George's health. On cross-examination by the guardian *ad litem*, Joseph testified that George asked him about initiating the divorce, and that he and George did not have conversations about divorce before he became George's guardian.

¶ 12       George did not personally appear at the hearing. However, the trial court took judicial notice of the November 21, 2014 hearing at which George appeared and spoke about his desire to get a divorce. The court also took judicial notice of the May 12, 2014 ruling denying Laima's motion for visitation.

¶ 13       After the close of evidence, the court determined that the witnesses were credible. The court then found "by clear and convincing evidence that it would be in the best interest of George Frank Warga to have an attorney appointed for him to go to the marital dissolution court." On March 24, 2015, the trial court issued written orders denying Laima's motion to reconsider and granting George's motion to authorize the retention of a divorce attorney. Two days later, George filed a petition for dissolution of marriage against Laima. In re Marriage of Warga, No. 2015 D 2782 (Cir. Ct. Cook Co.). This appeal of the guardianship court's order followed.

¶ 14                                          ANALYSIS

¶ 15       Laima raises six issues on appeal. She contends that: (1) the trial court erred by holding that she did not have standing to participate in the best interests hearing; (2) George did not have statutory authority to seek permission to file a petition for dissolution; (3) the trial court failed to properly apply the test set forth in section 11a-17(e) of the Act during the best interests hearing; (4) the trial court improperly prejudged its decision granting the guardian permission to seek a divorce for George; (5) the best interests hearing did not comply with the substantive

due process requirements set forth in *Karbin*; and (6) the court erred by denying her motion for substitution of judge for cause.

¶ 16 Because it is dispositive, we first consider Laima's arguments concerning standing. In *Karbin v. Karbin*, 2012 IL 112815, our supreme court held that a guardian has authority to seek permission from the court to file petition for dissolution of marriage on behalf of a ward if the court finds that filing the petition is in the ward's best interests. *Id*. ¶ 51. The test for granting such a motion is whether dissolution is in the best interests of the ward. The court explained that, in order to "ensure that the best interests of the ward are achieved while preventing a guardian from pursuing a dissolution of marriage for his or her own financial benefit, or because of the guardian's personal antipathy toward the ward's spouse," trial courts should conduct a best interests hearing pursuant to section 11a-17(e) of the Act. *Id*. ¶ 53; see also 755 ILCS 5/11a-17(e) (West 2014). Moreover, to "further safeguard the interests of all parties involved," the court held that a guardian seeking permission to file a petition for dissolution of marriage on behalf of a ward must show by clear and convincing evidence that dissolution is in the ward's best interests. *Karbin*, 2012 IL 112815, ¶ 53.

¶ 17 After the supreme court decided *Karbin*, the General Assembly amended the Act to codify *Karbin*'s central holdings. See 755 ILCS 5/11a-17(a-5) (West 2014). Consistent with *Karbin*, section 11a-17(a-5) provides in relevant part:

"Upon petition by the guardian of the ward's person or estate, the court may authorize and direct a guardian of the ward's person or estate to file a petition for dissolution of marriage or to file a petition for legal separation or declaration of invalidity of marriage under the Illinois Marriage and Dissolution of Marriage Act on behalf of the ward if the court finds by clear and convincing evidence that the relief sought is in the ward's best interests. In making its determination, the court shall consider the standards set forth in subsection (e) of this Section." *Id*.

¶ 18 The *Karbin* court outlined the procedures for pursuing such a motion, and held that the trial court should hold a "best interests" hearing for the ward, governed by the familiar standards set forth in section 11a-17(e) of the Act. *Karbin*, 2012 IL 223825, ¶¶ 52-53. Section 11a-17(e) states:

"Decisions made by a guardian on behalf of a ward shall be made in accordance with the following standards for decision making. Decisions made by a guardian on behalf of a ward may be made by conforming as closely as possible to what the ward, if competent, would have done or intended under the circumstances, taking into account evidence that includes, but is not limited to, the ward's personal, philosophical, religious and moral beliefs, and ethical values relative to the decision to be made by the guardian. Where possible, the guardian shall determine how the ward would have made a decision based on the ward's previously expressed preferences, and make decisions in accordance with the preferences of the ward. If the ward's wishes are unknown and remain unknown after reasonable efforts to discern them, the decision shall be made on the basis of the ward's best interests as determined by the guardian. In determining the ward's best interests, the guardian shall weigh the reason for and nature of the proposed action, the benefit or necessity of the action, the possible risks and other consequences of the proposed action, and any available alternatives and their risks, consequences and benefits, and shall take into account any other information, including the views of

family and friends, that the guardian believes the ward would have considered if able to act for herself or himself." 755 ILCS 5/11a-17(e) (West 2014).

¶ 19    Although both *Karbin* and section 11a-17(a-5) direct trial courts to conduct a best interests hearing to determine whether a ward should be allowed to file a petition for dissolution, neither authority indicates anything regarding whether the ward's spouse has standing to participate in the best interests hearing. Rather, they focus on the guardian, stating the guardian is only required to take into account, among a variety of other factors, "the views of family and friends" in determining the ward's best interests. The issue of standing presents a question of law which we review *de novo*. *Malec v. City of Belleville*, 384 Ill. App. 3d 465, 468 (2008).

¶ 20    Our previous holdings regarding participation of nonguardian spouses in proceedings regarding personal decisions made on behalf of wards control the present dispute. We have held that "Article XIa [of the Act] does not contain any provision providing that relatives can *** challenge the guardian's individual decisions regarding visitation or other matters concerning the ward." *Struck v. Cook County Public Guardian*, 387 Ill. App. 3d 867, 877 (2008). Even though this case presents the issue of a divorce, we see no compelling reason to depart from that general rule here. While Laima is George's spouse, she is not his guardian, and there is no statutory basis for her to challenge the guardian's decisions in this matter.

¶ 21    Laima argues, however, that she should have been granted standing to challenge the marriage dissolution motion pursuant to her constitutional rights as a spouse. She relies on *Griswold v. Connecticut*, 381 U.S. 479 (1965), in which the Supreme Court held that a Connecticut law forbidding the use of contraceptives unconstitutionally intruded upon the right of marital privacy, and *Stanley v. Illinois*, 405 U.S. 645 (1972), a case discussing the due process rights of unwed fathers. Laima argues that the right to marital privacy and due process grant her "the right to remain in her marriage."

¶ 22    It is true that the Supreme Court has continually recognized that the right to marry is protected by the Constitution. See *Obergefell v. Hodges*, 576 U.S. ___, ___, 135 S. Ct. 2584, 2598 (2015); *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996); *Turner v. Safley*, 482 U.S. 78, 95 (1987); *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978); *Loving v. Virginia*, 388 U.S. 1, 12 (1967). However, there is no corollary constitutional right for one spouse to remain in a marriage. To the contrary, the Supreme Court has specifically protected individuals' rights to *dissolve* a marriage. See *Boddie v. Connecticut*, 401 U.S. 371, 382-83 (1971) (holding that it is a violation of due process for a state to preempt the right to dissolve a marriage without affording all citizens access to the means it has prescribed for doing so). Thus, denying Laima standing to challenge the guardian's motion to retain divorce counsel does not infringe on her right to marry or her right to marital privacy. Laima's reliance on cases such as *Griswold* and *Stanley* are entirely misplaced.

¶ 23    There are other reasons why Laima had no standing to oppose the authorization. First, in divorce proceedings involving two competent spouses, one spouse cannot contest the other's mere filing of the case through counsel. It would thus be wholly illogical to permit it in this instance. See *In re Estate of Henry*, 396 Ill. App. 3d 88, 96 (2009) (finding that just as the appellants would lack standing to challenge a change to the ward's will if he were competent, so too do they lack standing to challenge the order granting the plenary guardian's petition to change the will).

¶ 24    Second, permitting Laima to challenge the authorization would be contrary to the principles emphasized in *Karbin*. The *Karbin* court stated that "when a guardian decides that

[the ward's] best interests require that the marriage be dissolved, the guardian must have the power to take appropriate legal action to accomplish that end." *Karbin*, 2012 IL 112815, ¶ 49. It is clear that the guardian alone has this power, and nothing in the court's opinion alludes to allowing the spouse to challenge the guardian's decision. In fact, the *Karbin* court found that the guardian's decision to institute a dissolution action on behalf of the ward is no different than the many other personal decisions the guardian makes. *Id.* And, as we noted above, nothing in the Act permits a relative to challenge individual decisions made by the guardian on behalf of the ward. See *Struck*, 387 Ill. App. 3d at 877. We decline to erode the principles under which *Karbin* was decided and so cannot find that a ward's spouse has standing to challenge this particular decision made by the duly appointed guardian.

¶ 25    Like any spouse, Laima may contest the grounds for dissolution of her marriage in the divorce court. However, she contends this is an inadequate remedy, arguing that by "[a]llowing the Probate Court's order to stand, under Illinois' no-fault divorce procedures, [we] will [e]nsure that the marriage between Laima Warga and George Warga will be terminated." This is both irrelevant and incorrect. First, this argument has no bearing on whether a party has standing under the Act. Second, in contested no-fault divorce cases, the grounds for divorce are tried first. 750 ILCS 5/403(e) (West 2014). Even under the no-fault principle, the divorce court must find that George and Laima have lived separately for at least two years (or there has been a waiver of this requirement by both spouses), that "irreconcilable differences have caused the irretrievable breakdown of the marriage," and that "efforts at reconciliation have failed or that future attempts at reconciliation would be impracticable and not in the best interests of the family." 750 ILCS 5/401(a)(2) (West 2014). Laima remains free to submit evidence challenging those facts to the divorce court if she chooses.

¶ 26    Our holding regarding Laima's standing necessarily requires that we affirm the other orders which she challenges: (1) denying her motion for substitution of judge; (2) appointing independent counsel for George; and (3) otherwise resolving the February 25, 2015 "best interests" hearing.

¶ 27                                          CONCLUSION

¶ 28    For these reasons, we affirm the orders below.

¶ 29    Affirmed.