**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230285-U

Order filed August 14, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Petitioner-Appellant, | ) ) ) ) | Appeal Nos. 3-23-0285, 3-23-0286 3-23-0288, 3-23-0594 3-23-0595 |
| v. | ) ) ) | Circuit Nos. 23-MX-18, 22-MX-2822, 22-MX-2823, 23-MX-557, |
| CENTRIC BANK ACCOUNTS 1146992, 1147974, 1160944, | ) ) | 23-MX-559 |
| Respondent-Appellee. | ) ) ) | The Honorable David M. Carlson, Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Holdridge and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Circuit court did not err in (1) vacating seizure warrant for bank accounts located outside the state of Illinois because court lacked jurisdiction over them, (2) denying the State's motion to reconsider, or (3) granting First Commonwealth Bank's motions to dismiss the State's forfeiture actions.

¶ 2   The Circuit Court of Will County issued a seizure warrant for several accounts held at Centric Bank, pursuant to the money laundering statute set forth in Article 29B of the Criminal Code of 2012 (720 ILCS 5/29B-0.5, *et seq.* (West 2022)). Megawholesale, Inc. (Megawholesale) and PA Distribution LLC (PA Distribution), holders of the Centric Bank accounts, filed a motion to quash the warrant. Following a hearing, the court vacated the warrant, finding that it lacked jurisdiction over the bank accounts. Thereafter, the State filed two civil complaints for forfeiture seeking the contents of the bank accounts. First Commonwealth Bank (First Commonwealth), the successor to Centric Bank, filed motions to dismiss, which the trial court granted. The State appeals, arguing that (1) the circuit court erred in examining its jurisdiction instead of following the procedures set forth in the money laundering statute, (2) First Commonwealth Bank lacked standing to contest the forfeiture actions, and (3) the court had jurisdiction over the bank accounts. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4   On December 15, 2022, Will County Circuit Court Judge David M. Carlson issued a seizure warrant for several bank accounts, including Centric Bank account numbers 1160944, 1146992 and 1147974. In its order issuing the warrant, the circuit court found as follows:

> "I am satisfied that the affidavit establishes probable cause to believe that the property so described is subject to seizure and forfeiture and that grounds exist for the issuance of this seizure warrant under authority of the Illinois Money Laundering Act, 720 ILCS 5/29B-1.
>
>                                        ***
>
> I FURTHER FIND That all three above financial institutions are subject to the jurisdiction of this Court because they are either present in the State of Illinois, or have

2

submitted to the jurisdiction of this court pursuant to 735 ILCS 5/2-709 by engaging in the transaction of any business within the State of Illinois, or other enumerated conduct."

¶ 5                                    A. Case No. 23-MX-18

¶ 6        On January 4, 2023, Megawholesale, Inc. and PA Distribution LLC, the holders of the Centric Bank accounts named in the seizure warrant, filed a motion to quash the seizure warrant, asserting that the Will County Circuit Court lacked jurisdiction to seize their accounts because they are Pennsylvania businesses and all their assets are located in Pennsylvania. Attached to the motion were affidavits from the presidents of Megawholesale and PA Distribution.

¶ 7        The court held a hearing on January 4, 2023. The State objected, arguing that a hearing was premature and not authorized by the money laundering statute. Megawholesale and PA Distribution stated that the warrant issued by the circuit was "jeopardizing their ability to function" by freezing their bank accounts. They argued that the circuit court had no jurisdiction over their Centric Bank accounts because they do not do business in Illinois. The State responded that the long-arm statute contained in the Code of Civil Procedure (Code) (735 ILCS 5/2-209 (West 2022)) gave the circuit court jurisdiction over Megawholesale and PA Distribution, as well as their assets.

¶ 8        On January 4, 2023, following the hearing, Judge Carlson entered an order (1) vacating the December 15, 2022, seizure warrant without prejudice with respect to the Centric Bank accounts, (2) unfreezing the assets in those accounts, releasing them to Megawholesale and PA Distribution, and allowing them to use them for legitimate business purposes, (3) requiring Megawholesale and PA Distribution to maintain a record of all expenditures from those accounts, and (4) ordering Megawholesale and PA Distribution to repatriate the funds from those accounts if the trial court later determined the seizure of the accounts was proper. The State filed a motion to reconsider the

3

order, arguing that the court erred in holding a hearing on the motion to quash and vacating the seizure warrant.

¶ 9                                    B. Case Nos. 22-MX-2822 and 22-MX-2823

¶ 10        On December 27, 2022, the State filed a notice and petition for a preliminary determination hearing with respect to the Centric Bank accounts. On January 11, 2023, a preliminary determination hearing was held before Will County Circuit Court Judge Elizabeth Dow. At that hearing, only the State was present. The State informed the court that a seizure warrant had been issued for the subject bank accounts and asked the court to find probable cause existed for seizure of the accounts. The court stated: "Probable cause is found." The court ordered the seizing agency to hold the accounts until the forfeiture case was resolved.

¶ 11        On February 3, 2023, Megawholesale and PA Distribution filed a motion to vacate the court's January 11, 2023 order. On February 8, 2023, the parties entered an agreed order to vacate the order. The case was then transferred to Judge Carlson.

¶ 12              C. Joint Ruling on Case Nos. 23-MX-18, 22-MX-2822, and 22-MX-2823

¶ 13        On May 18, 2023, the circuit court held a joint hearing on case Nos. 23-MX-18, 22-MX-2822 and 22-MX-2823. Following the hearing, the circuit court entered an order (1) denying the State's motion to reconsider, (2) finding that it "has no jurisdiction to enforce the seizure warrant outside the State of Illinois;" (3) ruling "[t]hat no seizure occurred in these cases;" and (4) dismissing Will County Circuit Court case Nos. 22-MX-2822, 22-MX-2823, and 23-MX-18.

¶ 14        On June 16, 2023, the State filed notices of appeal in all three cases. Will County Circuit Court case No. 22-MX-18 became Appeal No. 3-23-0285 in this court; Will County Circuit Court case No. 22- MX-2822 became Appeal No. 3-23-0286 in this court; and Will County Circuit Court case No. 22-MX-2823 became Appeal No. 3-23-0288 in this court.

4

¶ 16          On March 9, 2023, the State filed civil complaints for forfeiture, seeking the contents of the three Centric Bank accounts. On May 1, 2023, First Commonwealth Bank, as successor in interest to Centric Bank, filed motions to dismiss the complaints, asserting that the court lacked jurisdiction over the bank accounts and their contents. Attached to the motions was an affidavit from Gage Patchen, a loan workout officer at First Commonwealth. Patchen averred that First Commonwealth is a Pennsylvania-chartered bank that operates primarily in Pennsylvania. He further averred that First Commonwealth operates several branches in Ohio but has no branches, offices or employees in Illinois. According to Patchen, Centric Bank operated as a community bank in Pennsylvania until February 1, 2023, when First Commonwealth acquired it through merger. Centric Bank had no offices outside Pennsylvania. The State responded that (1) First Commonwealth lacked standing to file the motions, and (2) the court had jurisdiction over the accounts.

¶ 17          On September 28, 2023, the court held a hearing on the motions to dismiss. Following the hearing, the court entered an order finding that (1) First Commonwealth had standing to file the motions, and (2) the court lacked jurisdiction over the forfeiture actions. The court's order stated as follows:

> "A forfeiture action is a civil, in rem proceeding. The procedures governing this judicial in rem forfeiture action are contained in the Money Laundering Statute (720 ILCS 5/29-B, et seq.). Pursuant to the Money Laundering Statute, a valid seizure of the res is a prerequisite to the initiation of the in rem civil forfeiture proceeding with jurisdiction dependent upon seizure of the res. Illinois judicial seizure warrants issued pursuant to the Money laundering statute have no extra-territorial effect and cannot be executed outside of

the State of Illinois. No seizure of (former) Centric Bank Account[s] *** occurred. The court lacks jurisdiction over the res.

735 ILCS 5/209 ('Act submitting to jurisdiction --Process) [Long Arm Statute] has no relevance or application to the facts of this action."

The court, therefore, dismissed the State's complaints with prejudice.

¶ 18    On October 20, 2023, the State filed notices of appeal. Will County Circuit Court case No. 23-MX-557 was assigned Appeal No. 3-23-0594 in this court, and Will County Circuit Court case No. 23-MX-558 was assigned Appeal No. 3-23-0595 in this court.

¶ 19                        E. Cases consolidated on appeal

¶ 20    On November 8, 2023, the State filed an unopposed motion to consolidate the appeals in Appeal Nos. 3-23-0285, 3-23-0286, and 3-23-0288. On November 17, 2023, we allowed the motion and consolidated the appeals into Appeal No. 3-23-0285. On December 12, 2023, the State filed an unopposed motion to consolidate case Nos. 3-23-0594 and 3-23-0595 with each other and Appeal No. 3-23-0285. On December 26, 2023, we allowed the motion so that all five appeals are now encompassed in Appeal No. 3-23-0285.

¶ 21                        II. ANALYSIS

¶ 22    The State raises three issues on appeal. First, the State contends that the circuit court erred in examining its jurisdiction and ruling on the motion to quash the seizure warrant instead of following the procedures set forth in the money laundering statute. Second, the State argues that First Commonwealth lacked standing to contest the forfeiture actions. Finally, the State contends that the court erred in vacating the seizure warrants because it had jurisdiction over the bank accounts. All these issues present questions of law that we review *de novo*. See *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶ 31 (questions

relating to circuit court's jurisdiction and interpretation of a statute present questions of law subject to *de novo* review); *Warga ex rel. Warga v. Warga*, 2015 IL App (1st) 151182, ¶ 19 (issue of standing presents a question law that we review *de novo*).

¶ 23                                    A. Money Laundering Statute

¶ 24         The State initiated forfeiture proceedings under the money laundering statute. The State argues that the circuit court failed to follow the procedures set forth in that statute when it vacated the seizure warrant. Resolution of this issue requires us to examine the provisions of the statute.

¶ 25         Section 29B-4(e) of the money laundering statute addresses seizure warrants and states as follows:

> "(e) The State may request the issuance of a warrant authorizing the seizure of property described in Section 29B-5 of this Article in the same manner as provided for a search warrant. If the court determines that there is probable cause to believe that the property to be seized would be subject to forfeiture, the court shall issue a warrant authorizing the seizure of that property." 720 ILCS 5/29B-4(e) (West 2022).

¶ 26         Section 29B-5 defines property subject to seizure and forfeiture under the statute as "any property, real or personal, constituting, derived from, or traceable to any proceeds the person obtained, directly or indirectly, as a result of a violation of this Article." *Id*. § 29B-5(a). Section 29B-6 addresses the seizure of property and provides in pertinent part:

> "(a) Property subject to forfeiture under this Article may be seized by the Director or any peace officer upon process or seizure warrant issued by any court having jurisdiction over the property. ***

7

(b) In the event of seizure under subsection (a) of this Section, forfeiture proceedings shall be instituted in accordance with this Article." *Id*. § 29B-6(a)-(b).

Section 29B-9 sets forth judicial review following a seizure:

"(a) Within 28 days of the seizure, the State shall seek a preliminary determination from the circuit court as to whether there is probable cause that the property may be subject to forfeiture.

**** 

(e) Upon a finding of probable cause as required under this Section, the circuit court shall order the property subject to the applicable forfeiture Act held until the conclusion of any forfeiture proceeding." *Id*. § 59B-9.

Finally, section 29B-13 addresses how the parties proceed after property has been seized:

"(1) If, after a review of the facts surrounding the seizure, the State's Attorney is of the opinion that the seized property is subject to forfeiture, then, within 28 days of the receipt of notice of seizure by the seizing agency or the filing of the claim, whichever is later, the State's Attorney shall institute judicial forfeiture proceedings by filing a verified complaint for forfeiture. If authorized by law, a forfeiture shall be ordered by a court on an action in rem brought by a State's Attorney under a verified complaint for forfeiture.

**** 

(5) Only an owner of or interest holder in the property may file an answer asserting a claim against the property in the action in rem. For purposes of this Section, the owner or interest holder shall be referred to as claimant. Upon motion of the State,

the court shall first hold a hearing, in which a claimant shall establish by a preponderance of the evidence, that he or she has a lawful, legitimate ownership interest in the property and that it was obtained through a lawful source. *Id.* § 29B-13.

¶ 29      On or about December 15, 2023, the State requested a seizure warrant to be issued for the subject bank accounts, pursuant to section 29B-4(e) of the money laundering statute. On the same date, Judge Carlson issued a seizure warrant for the accounts pursuant to section 29B-6(a) of the statute. Two weeks later, the State filed a notice and petition for a preliminary determination hearing pursuant to section 29B-9 of the statute. Before that hearing was held, Megawholesale and PA Distribution, the holders of the accounts named in the seizure warrant, filed a motion to quash the seizure warrant. The State argued to the circuit court and to this court on appeal that the circuit court lacked authority to quash the seizure warrant because no provision of the money laundering statute allowed it to do so. We disagree.

¶ 30      Section 29B-6(a) of the statute provides: "Property subject to forfeiture under this Article may be seized by the Director or any peace officer upon process or *seizure warrant issued by any court having jurisdiction over the property*." (Emphasis added.) *Id.* § 29B-6(a). This statutory language establishes that a seizure warrant may only be issued by a court with jurisdiction over the property sought to be seized. It was appropriate, therefore, for the circuit court to examine whether it had jurisdiction to issue the seizure warrant before proceeding to a preliminary hearing pursuant to section 29-B.

¶ 31      Based on the plain language of section 29B-6, a prerequisite to a circuit court issuing a warrant under the money laundering act is the circuit court "having jurisdiction over the property."

*Id*. Thus, the circuit court did not err in considering whether it had jurisdiction to issue the seizure warrant before engaging in further proceedings under the money laundering statute.

¶ 32                                                   B. Standing

¶ 33       Next, the State argues that the trial court erred in dismissing their forfeiture proceedings brought under section 29B-13 of the money laundering statute because First Commonwealth lacked standing to file their motions to dismiss.

¶ 34       The doctrine of standing seeks to ensure that courts decide actual controversies and not abstract questions or moot issues. *In re Marriage of Rodriguez,* 131 Ill. 2d 273, 279-80 (1989). The primary focus of a standing inquiry is whether a party has a real interest in the outcome of the controversy. *Id.* at 280.

¶ 35       The money laundering statute allows "an owner of or interest holder in the property" to respond to a State's complaint for forfeiture and is given the title of "movant." 720 ILCS 5/29B-13(5) (West 2022). The State bears the burden of establishing that a movant lacks standing to contest a forfeiture action. See *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van,* 177 Ill. 2d 314, 331 (1997). The State successfully satisfies this burden only if it can prove that the movant "has not suffered an injury in fact to a legally cognizable interest." *Id*. "In addition, the legally cognizable interest should be construed broadly to 'include any * * * recognizable legal or equitable interest in the property seized.' " *Id*. (quoting S. Rep. No. 225, 98th Cong., 2d Sess. 215 (1984)).

¶ 36       The relationship between a bank and its depositor is contractual in nature. *National Bank of Monticello v. Quinn,* 126 Ill. 2d 129, 134 (1988). A binding contract between a bank and its depositor is created when a customer opens an account at the bank and deposits money into it. *Continental Casualty Co., Inc. v. American National Bank and Trust Co. of Chicago*, 329 Ill. App.

10

3d 686, 692-93 (2002). When money is deposited with a bank, title to the money passes to the bank and the money becomes part of the bank's assets. *Id.*; *Baiar v. O'Connell*, 365 Ill. 208, 210 (1936). "[T]he bank becomes a debtor to the extent of the deposit and, to that extent, the depositor becomes a creditor." *Selby v. DuQuoin State Bank,* 223 Ill. App. 3d 104, 108 (1991).

¶ 37        Here, the bank accounts at issue are located at First Commonwealth Bank. First Commonwealth, therefore, has title to the accounts. See *Baiar*, 365 Ill. at 210; *Continental Casualty Co., Inc.,* 329 Ill. App. 3d at 692-93. Because First Commonwealth has title to the accounts, it has made a sufficient showing that it owns the funds in the accounts at issue. See *Old Salem Chautauqua Ass'n v. Illinois District Council of the Assembly of God*, 16 Ill. 2d 470, 475 (1959) (where title exists, presumption is that ownership exists); *Pekin Ins. Co. v. U.S. Credit Funding, Ltd.*, 212 Ill. App. 3d 673, 677 (1991) (*prima facie* presumption of ownership arises from title).

¶ 38        Not only does First Commonwealth Bank have title to the accounts, First Commonwealth also has possession of them. Customers of First Commonwealth's predecessor, Centric Bank, placed the funds with Centric Bank, and First Commonwealth now possesses and maintains those funds. First Commonwealth Bank's ownership interest in and possession of the accounts are sufficient to confer standing to First Commonwealth to contest the State's forfeiture actions. See *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 959 F. Supp. 2d 81, 100-101 (D.D.C. 2013) (bank had standing to contest forfeiture of assets in accounts it held). The trial court, therefore, properly ruled that First Commonwealth had standing to contest the State's forfeiture actions.

¶ 39                                        C. Jurisdiction

11

¶ 40       The final issue we must address is whether the trial court erred in finding that it lacked jurisdiction to issue the seizure warrant.

¶ 41       A forfeiture action is a civil, *in rem* judicial proceeding. *People v. $174,980 United States Currency*, 2013 IL App (1st) 122480, ¶ 21. It is an action against a specific item of property. *People v. One 1985 Chevrolet Camaro, VIN 1G1FP87F5FN117236*, 149 Ill. App. 3d 609, 612 (1986). "The State brings the action against seized property pursuant to the legal fiction that the property itself is guilty of facilitating a crime." *People v. Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 497 (2005).

¶ 42       *In rem* jurisdiction refers to a court's power to adjudicate the rights to that property, including the power to seize and hold the property. *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 532 (2010). Judgments *in rem* operate directly upon the property and are binding upon all persons who have an interest in the property. *Austin v. Royal League*, 316 Ill. 188, 193 (1925). Since a judgment *in rem* operates upon the particular property, it creates no personal liability. *Id*.

¶ 43       A quasi *in rem* proceeding, on the other hand, is taken against specific property but is brought against certain named persons. *Id*. Thus, unlike an *in rem* proceeding, a quasi *in rem* proceeding affects the rights of individuals named in the complaint. *Id.*

¶ 44       Because an *in rem* proceeding is an action taken directly against property, *in rem* jurisdiction rests exclusively on the situs of the *res.* See *Smith v. Hammel*, 2014 IL App (5th) 130227, ¶ 26 (citing *McCallum v. Baltimore & Ohio R.R. Co.*, 379 Ill. 60, 69 (1942)). "[T]he basis of *in rem* *** jurisdiction 'is the presence of the subject property within the territorial jurisdiction of the forum State.'" *Golden Rule Insurance Co. v. Widoff*, 291 Ill. App. 3d 112, 116 (1997) (quoting *Hanson v. Deckla,* 357 U.S. 235, 246 (1958)).

¶ 45    For an Illinois court to have *in rem* jurisdiction over assets, the assets must be located in Illinois. *Id.* If assets are located in another state, an Illinois court cannot exercise *in rem* jurisdiction over them. *Id.* In an *in rem* proceeding, the trial court's jurisdiction is entirely dependent on the location of the assets in Illinois. *In re Commissioner of Banks and Real Estate*, 327 Ill. App. 3d 441, 466 (2001).

¶ 46    The money laundering statute provides that property is subject to seizure only if a seizure warrant is issued by a "court having jurisdiction over the property." 720 ILCS 5/29B-6(a) (West 2022). Considering identical language contained in the Illinois Controlled Substances Act, we ruled that "it is the location of the property which is the basis of and confirms *in rem* jurisdiction on the trial court in this case." *One 1985 Chevrolet Camaro,* 149 Ill. App. 3d at 612.

¶ 47    In a recent forfeiture case, we again stated: "[I]t is the location of the property within the territorial jurisdiction of this state that confers jurisdiction on the circuit court." *People v. 2016 Chrysler 200 Black*, 2023 IL App (3d) 210583-U, ¶ 13. In that case, the vehicle sought to be seized was located in Indiana; therefore, we concluded that the Will County circuit court lacked *in rem* jurisdiction over it. *Id.*

¶ 48    Here, there is no dispute that the bank accounts at issue are not located in Illinois because neither Centric Bank nor First Commonwealth Bank has any branches in this state. Thus, the circuit court properly ruled that it lacked jurisdiction over the accounts and the assets contained therein.

¶ 49    The State, however, contends that a different result is warranted based on *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310 (1945) and its progeny, as well as the long arm statute contained in the Code. For the reasons set forth below, we disagree.

¶ 50        The fundamental principle for which *International Shoe* stands is that when a defendant is not present within a court's jurisdiction, he must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In *Shaffer v. Heitner*, 433 U.S. 186, 213-14 (1977), the Supreme Court extended the "minimum contacts" doctrine of *International Shoe* to cases involving quasi *in rem* jurisdiction.

¶ 51        Here, the State's forfeiture action is an *in rem* proceeding. See *$174,980 United States Currency*, 2013 IL App (1st) 122480, ¶ 21. Unlike a quasi *in rem* action which is brought against named persons, an *in rem* action is taken directly against property. See *One 1985 Chevrolet*, 149 Ill. App. 3d 609, 612 (1986). Because an *in rem* action is brought against property, rather than a person, the minimum contacts test set forth in *International Shoe* and extended in *Shaeffer* does not apply. Unlike a person, property does not have "minimum contacts." Thus, Supreme Court law, as set forth in *International Shoe* and its progeny, does not support the State's position that the circuit court had jurisdiction over the accounts in this case.

¶ 52        Similarly, the long-arm statute does not provide the circuit court with jurisdiction over the subject accounts. The statute provides: "Any *person*, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts[.]" (Emphasis added.) 735 ILCS 5/2-209(a) (West 2022). By its very terms, the statute provides a basis for jurisdiction over a "person", not property. *Id.*; see also *Volkswagen Insurance Co. v. Whittington*, 58 Ill. App. 3d at 621, 623 (1978) (long-arm statute "extends the personal jurisdiction of Illinois courts over nonresident defendants").

¶ 53    *In rem* proceedings are brought against property, not individuals. *See One 1985 Chevrolet Camaro, VIN 1G1FP87F5FN117236*, 149 Ill. App. 3d at 612. Thus, the long-arm statute does not apply to *in rem* proceedings. Judge Carlson properly found as such in his September 28, 2023 order, stating that the long-arm statute "has no relevance or application to the facts of this action."

¶ 54    For the reasons set forth above, the trial court properly (1) entered an order vacating its seizure warrant, (2) denied the State's motion to reconsider that order, and (3) granted First Commonwealth Bank's motions to dismiss the State's civil forfeiture actions.

¶ 55                                    III. CONCLUSION

¶ 56    The judgment of the circuit court of Will County is affirmed.

¶ 57    Affirmed.